*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *MARY A. FONTAINE,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 07-18-P-S* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* [1] | ) | |
| | ) | |
| *Defendant* | ) | |

*REPORT AND RECOMMENDED DECISION* [2]

This Social Security Disability ("SSD") appeal raises the question whether the commissioner supportably determined that the plaintiff, who alleges disability stemming from congestive heart failure, dilated cardiomyopathy and insulin-dependent diabetes, failed to meet her burden of proving that (i) work she performed prior to her date last insured of December 31, 2002 was not substantial gainful activity ("SGA") or, alternatively, (ii) her impairments as of that date were severe.  I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted currently serving Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on October 5, 2007 pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

law judge found, in relevant part, that the plaintiff last met the insured-status requirements of the

Social Security Act on December 31, 2002, Finding 1, Record at 16; that she had not met her burden of

proof that her work activity after her alleged onset of disability on June 1, 2002 was not SGA, Finding

2, *id*.; that, alternatively, she had not met her burden of proof that she suffered a severe impairment or

combination of impairments prior to her date last insured for benefits, Finding 4, *id*. at 18; and that she

therefore was not under a disability as defined in the Social Security Act at any time through the date

of decision (June 20, 2006), Finding 5, *id*. at 19.  The Appeals Council declined to review the

decision, *id*. at 6-10, making it the final determination of the commissioner, 20 C.F.R. § 404.981;

*Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is

supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health

& Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported

by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion

drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health

& Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Steps 1 and 2 of the sequential-evaluation process.  At

Step 1, the plaintiff bears the burden of proving that she did not engage in substantial gainful activity

during the period in question.  *Bell v. Commissioner of Social Sec.*, 105 F.3d 244, 246 (6th Cir.

1996); *see also Field v. Chater*, 920 F. Supp. 240, 241 (D. Me. 1995), *called into doubt on other

grounds, Seavey v. Barnhart*, 276 F.3d 1 (1st Cir. 2001).  Work is considered "substantial" if it

"involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a).  "[W]ork may be

substantial even if it is done on a part-time basis or if [a claimant] do[es] less, get[s] paid less, or

[has] less responsibility than when [he or she] worked before."  *Id*.  "Work activity is gainful if it is

the kind of work usually done for pay or profit, whether or not a profit is realized." *Id*. § 404.1572(b).

If a claimant is able to work at SGA level, the commissioner will find that he or she is not disabled.

*See id.* § 404.1571.

Claimants also bear the burden of proof at Step 2, although it is a *de minimis* burden, designed

to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*,

795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the

commissioner may make a determination of non-disability at Step 2 only when the medical evidence

"establishes only a slight abnormality or combination of slight abnormalities which would have no

more than a minimal effect on an individual's ability to work even if the individual's age, education,

or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-

28).

The plaintiff, who is proceeding *pro se*, complains that the administrative law judge

(i) discouraged her and her witnesses from testifying at hearing, (ii) erred in finding that self-

employment prior to her date last insured rose to the SGA level, and (iii) failed to follow Social

Security Ruling 83-20 ("SSR 83-20") to infer her date of onset of disability. *See generally* My

Statement of Errors ("Statement of Errors") (Docket No. 6). In addition, she notes in passing that she

has repeatedly endeavored without success to correct a host of errors made in her case from her date

of filing onward, and that when she ultimately pressed those points at the Appeals Council level, that

body failed even to consider them, *see id*. at 5-6, and she appends to her Statement of Errors copies of

pamphlets and articles discussing the nature of, and treatments for, cardiomyopathy and congestive

heart failure as well as three recent letters of treating physicians, *see* Attachments to *id*.

Both in her Statement of Errors and at oral argument, the plaintiff did an admirable job

representing herself and navigating this arcane field of law, which can baffle even experienced

counsel.  She invested a great deal of time and effort in pursuing her case, unfortunately encountering

needless frustrations along the way.  Nonetheless, for reasons well-articulated by the commissioner's

counsel at oral argument, she does not succeed in demonstrating the existence of an error justifying

reversal and remand of this case.

## I.  Discussion

At oral argument, counsel for the commissioner conceded that the administrative law judge's

Step 1 finding is flawed (albeit not for the reasons set forth in the Statement of Errors).[3]  She

acknowledged that it was clear from the Record that the plaintiff had felt ill-used and ill-treated

throughout the administrative process, including during hearing.[4]  For this, she commendably

apologized.  However, she went on to explain persuasively why the administrative law judge's error

at Step 1 and insensitive comments during hearing do not warrant reversing this case and sending it

back to the commissioner for further proceedings: that the administrative law judge made an

alternative Step 2 finding that the plaintiff had not met her burden of proving that she suffered a severe

impairment prior to her date last insured for benefits, and that this finding is supported by substantial

evidence of record.

The plaintiff's SSD insurance expired on December 31, 2002.  *See* Finding 1, Record at 16.

---

[3] Social Security regulations outline three tests pursuant to which a self-employed person may be found to have engaged in SGA; income alone is not dispositive "because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements."  20 C.F.R. § 404.1575(a)(2).  The administrative law judge found the plaintiff to have engaged in SGA pursuant to Test Two, which provides: "You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood."  *Id*. § 404.1575(a)(2)(ii).  As the commissioner conceded at oral argument, such a finding must be buttressed, among other things, with evidence addressing comparable work of unimpaired individuals in the claimant's community.  *See, e.g.,* Social Security Ruling 83-34, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at  117; Social Security Administration Program Operation Manual System ("POMS") § DI 10510.020(B), *available at* https://s044a90.ssa.gov/apps10/.  There is no such evidence in the Record.

[4] The plaintiff complains that, during her hearing, the administrative law judge (i) commented that there was not enough time to hear her two witnesses, whose testimony he characterized as "really not necessary," and (ii) told her, when she said at the close of her hearing that she wished to make a further comment, "You probably don't want to."  Statement of Errors at 1 (quoting Record at 530).

Accordingly, she was obliged to show that she suffered from disabling impairments on or before that time. She was diagnosed in October 2004 with dilated cardiomyopathy with chronic class III systolic heart failure. *See* Statement of Errors at 1; Record at 387-88. She argues that during 2002 she began to experience disabling fatigue stemming from that as-yet-undiagnosed condition, which her doctors then mistakenly attributed to other causes. *See* Statement of Errors at 2-3; Record at 517-19 (plaintiff's testimony at hearing). However, as counsel for the commissioner pointed out at oral argument, the plaintiff's objective medical evidence for 2002 is thin. There is no contemporaneous medical evidence that she suffered from her current heart condition during that time frame. *See* Record at 255-58. Four Disability Determination Services ("DDS") experts reviewing her file concluded that she failed to establish that she even suffered from a physical or mental impairment on or before her date last insured. *See id*. at 209-52. She did submit to the administrative law judge a letter dated April 26, 2005 from a subsequent treating physician, Roy J. Ulin, M.D., in which Dr. Ulin stated:

> Mary Fontaine presented to me on November 3, 2004 with a diagnosis of dilated cardiomyopathy and congestive heart failure. Previous studies had demonstrated severe left ventricle dysfunction with an estimated ejection fraction of 10%. At the time she was very fatigued and short of breath. She states that these symptoms dated back to mid 2002. I believe her initial symptoms in 2002 were likely due to her dilated cardiomyopathy. Presently she is on medication for congestive heart failure. She has had some improvement; however, I would still consider her to be New York Heart Association Class III. This implies that she is short of breath with mild exertion. She remains fatigued and needs to rest frequently during the day. I feel she remains disabled from any meaningful type of employment, including self-employment at home.

*Id*. at 415. Yet, the administrative law judge reasonably did not view this letter as "an endorsement of the claimant's theory of the claim" inasmuch as it "merely reported the claimant's assessment of her condition, [and] was not based on contemporaneous treatment notes, laboratory studies, or radiological studies[.]" *Id*. at 18. Finally, as the administrative law judge observed in his decision, no complaint of fatigue is actually noted in any of the contemporaneous progress notes for 2002. *See*

5

*id*. at 18, 255-58.[5]  At her hearing, the plaintiff insisted that she had in fact lodged such complaints during 2002 but that her providers had neglected to note them.  *See, e.g., id*. at 517-18.  The administrative law judge did not accept that explanation, *see id*. at 18, and he was not obliged to do so.

The bottom line, as counsel for the commissioner suggested at oral argument, is that the administrative law judge did not find objective medical evidence to support the plaintiff's contention that she was disabled commencing on or before December 31, 2002.  In the absence of such evidence, he had no "hook" on which to hang a disability determination.  Without that "hook," the testimony of the plaintiff and her witnesses regarding her symptoms in 2002 could make no difference.  *See, e.g.*, 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.") (citation omitted); Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2007) ("SSR 96-7p"), at 133 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.").[6]

---

[5] The plaintiff did report at an April 1, 2002 visit that she was "very discouraged overall" regarding her weight-loss efforts; she was assessed, *inter alia*, with depression/anxiety.  Record at 257.  However, the April 1, 2002 treatment note does not indicate that any particular treatment was prescribed that day for depression or anxiety.  *See id*.

[6] The plaintiff attached to her Statement of Errors materials, including letters from physicians, that had not been submitted either to the administrative law judge or to the Appeals Council.  *See* Attachments to Statement of Errors.  A court cannot take such hitherto unseen evidence into consideration in weighing whether the decision of an administrative law judge was supported by substantial evidence.  *See, e.g., Mills v. Apfel*, 244 F.3d 1, 4 (1st Cir. 2001) ("To weigh the new evidence as *if* it were before the ALJ would be, as one court fairly observed, a very peculiar enterprise, and (to us) one that distorts analysis.  The ALJ can hardly be expected to evaluate or account for the evidence that he never saw.") (citation and internal quotation marks omitted).  While a case can be remanded for purposes of consideration of newly proffered evidence, a claimant must show "good cause" for failure to present that evidence earlier.  *See, e.g., id.* at 5-6.  The "good cause" standard is a stringent one.  *See, e.g., Evangelista v. Secretary of Health (continued on next page)*

Accordingly, as counsel for the commissioner posited at oral argument, neither the administrative law judge's error at Step 1 in determining that the plaintiff had engaged in SGA work prior to her date last insured nor his discourteous remarks during her hearing warrant reversal and remand in this case.

The plaintiff raises two remaining points of error: that the administrative law judge failed to apply SSR 83-20 to determine the onset date of her disability, and that the Appeals Council did not bother even reviewing her letter of appeal in which she detailed numerous errors made in her case since its inception.  *See* Statement of Errors at 3-6 .

SSR 83-20 does not apply unless and until a plaintiff has been determined to be disabled (for example, as the result of a grant of Supplemental Security Income ("SSI") benefits, eligibility for which is not dependent on acquisition of insured status).  *See, e.g.*, SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 49 ("In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.  In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits."); *Beasich v. Commissioner of Soc. Sec.*, 66 Fed. Appx. 419, 432 (3d Cir. 2003) ("Here there was no dispute that, in the context of a separate application for SSI benefits, Beasich was determined to have been 'disabled' as of August 1, 1996, by his psychiatric condition that was the result of his head injury in 1981.  In view of that earlier SSI disability finding, the task of the ALJ in the context here was to

_____

& *Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987) ("Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided – to the end that the process not bog down and unduly impede the timely resolution of social security appeals.").  From all that appears, the plaintiff could have earlier obtained, and submitted to the Social Security Administration, the materials she now appends to her Statement of Errors.  She accordingly does not meet the stringent "good cause" standard.  *See, e.g., Lisa v. Secretary of Dep't of Health & Human Servs.*, 940 F.2d 40, 45 (2d Cir. 1991) ("Lisa must go beyond showing that the proffered evidence did not exist during the pendency of the administrative proceeding.  Rather, she must establish good cause for failing to produce and present the evidence at that time.").

determine onset – *i.e.,* when Beasich's impairments first became disabling. An earlier onset date assessment is mandated when a claimant already has been  found disabled and alleges an earlier disability onset date.") (footnote omitted); *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997) ("Since there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required.").   The plaintiff acknowledged at oral argument that she had filed an SSI application but that it had been turned down on the basis that she had too much income.[7]  Inasmuch as she has not been determined to be disabled, the administrative law judge was not obliged to apply SSR 83-20.

The plaintiff's final plaint appears to be predicated on an understandable misunderstanding. When the Appeals Council declines to overturn a decision of an administrative law judge, it announces, as it did in this case, that it has denied the claimant's request for review.  *See* Record at 6. The plaintiff understandably took this to mean that the Appeals Council had refused even to look at her letter of appeal.  *See* Statement of Errors at 6.  However, what the Appeals Council means when it says it has denied a request for review is that it has reviewed the materials submitted and found that they provide no basis for disturbing the underlying decision.  That was the case here.  *See* Record at 6-7, 10.

The plaintiff has pursued her claim with courage and conviction.  She has at times been treated insensitively during the administrative process.  There is no excuse for such treatment, and counsel for the commissioner, to her credit, has apologized for it.  Nonetheless, the plaintiff unfortunately was able to present virtually no objective medical evidence that she suffered from a debilitating impairment as of her date last insured.  The administrative law judge made an alternative finding at Step 2 that she had failed to meet her burden of showing she suffered a severe impairment as of that

---

[7] At oral argument, counsel for the commissioner encouraged the plaintiff to apply again for SSI benefits if her income has declined.

date.  That conclusion is supported by substantial evidence of record.  His decision accordingly must

be affirmed.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of October, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge